UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA L. SIMS,

   Plaintiff,

     v.

STEPHEN L. JOHNSON, Administrator,
United States Environmental Protection
Agency,

   Defendant.

Civil Action No. 97-570 (CKK)

**MEMORANDUM OPINION**
(April 11, 2006)

     Following over two and a half years of inaction in this case, which settled on March 25, 1999, Plaintiff filed a Motion for Declaratory Judgment Relating to Attorneys' Fees and Expenses on December 7, 2005. Concerned about potential tax implications, Plaintiff's motion seeks to have this Court "declare" that the $120,000 payment in "reasonable attorney's fees" by Defendant Stephen L. Johnson, in his official capacity as Administrator, United States Environmental Protection Agency ("Defendant"), to Plaintiff's former counsel as per the terms of the 1999 settlement "is a gratuity and does not satisfy any claim to attorneys' fees in this case." Pl.'s Mot. for Decl. J. at 1. Defendant opposes this motion, contending that this "Court lacks jurisdiction to order Plaintiff's requested relief since this case is now closed because the payment Plaintiff challenges was made pursuant to Court orders that were not appealed by either party and that long ago became 'final' in the sense of being no longer subject to reconsideration or review." Def.'s Opp'n at 1.

     Upon a searching examination of Plaintiff's motion, Defendant's Opposition, Plaintiff's Reply, the attached exhibits, the relevant case law, and the entire record herein, the Court shall deny Plaintiff's Motion for Declaratory Judgment.

# I: BACKGROUND

*A.     The Events Leading Up to the Present Dispute*

Plaintiff brought the above-captioned action on March 21, 1997, alleging, *inter alia*, discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16(c), and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. *See* Compl. at 1. In March 1999, facing a pre-trial statement deadline of March 25, 1999, counsel for the respective parties discussed the potential settlement of Plaintiff's case. Pursuant to what he thought were the terms of a "settlement in principle" reached by the parties, Plaintiff's attorney at the time – David H. Shapiro, of Swick & Shapiro, P.C. – sent a letter dated March 25, 1999 to Defendant's counsel, Assistant United States Attorney Scott S. Harris, attempting to memorialize the terms of the parties' agreement. *See* Def.'s Opp'n, Ex. 1 (3/25/99 Shapiro Letter to Harris). AUSA Harris reviewed this letter, signing the document after the notation "I AGREE." *Id*. at 4. In relevant part, the settlement as outlined in Shapiro's March 25, 1999 letter obligated Defendant to:

> Pay Ms. Sims the costs of this action, *including reasonable attorneys' fees* (if the parties cannot agree on the amounts of fees and costs, the matter will be submitted to the Court for resolution, with the EPA agreeing only that Ms. Sims is here entitled to an award of costs, including reasonable attorneys' fees, pursuant to Title VII and Rehabilitation Act)[.]

*Id*. (emphasis added).

However, soon thereafter a dispute erupted between the parties as to the precise scope of the parties' apparent settlement and whether the March 25, 1999 letter was binding. As such, Plaintiff moved on June 11, 1999 to enforce the terms of the March 25, 1999 letter as a binding settlement agreement. *See* Pl.'s Mot. to Enforce Settlement. Following briefing, the Court held a motions hearing on June 9, 2000, during which it ruled that the March 25, 1999 letter was an enforceable settlement agreement. *See* 6/9/00 Motions Hrg. Tr. By an Order dated July 10, 2000, the Court

noted its June 9, 2000 ruling, and dismissed this case without prejudice until October 7, 2000, further noting that the dismissal would be "with prejudice" if the parties did not petition the Court to reopen the case by that date. *See Sims v. Browner*, Civ. No. 97-570(CKK) (D.D.C. July 10, 2000) (order dismissing case).

However, Plaintiff on October 4, 2000 petitioned this Court to reopen her case. *See* Pl.'s Pet. to Reopen. Through an Order dated October 4, 2000, this Court reopened Plaintiff's case in order to address the remaining issue regarding the attorney's fees awarded to Plaintiff as a result of her settlement. *See Sims v. Browner*, Civ. No. 97-570(CKK) (D.D.C. Oct. 4, 2000) (order reopening case to resolve attn'ys fees). On March 28, 2001, Plaintiff's counsel, Mr. Shapiro, filed a Motion for Award of Costs and Reasonable Attorneys' Fees "as former counsel for the plaintiff and a real party in interest," requesting $150,269.21 in fees, but not including any moneys for Plaintiff's out-of-pocket expenses or the fees of her former counsel, Gary Simpson, Esq. (deceased). *See* Mot. for Award of Costs and Attn'y's Fees. That same day, Mr. Shapiro filed a Motion to Withdraw Appearance, contending that withdrawal was appropriate because "there has been a breakdown between counsel and the plaintiff which makes counsel's continued service in this case impossible." Mot. to Withdraw at 1. Mr. Shapiro's motion noted that the motion for attorney's fees was outstanding, but that Plaintiff "refuses to allow counsel to settle the fee petition with defense counsel" and "[a]ccordingly, counsel is filing herewith a petition for attorney's fees." *Id.* at 2.

The Court referred these and other related motions to Magistrate Judge Alan Kay for "settlement and resolution" by an Order dated May 23, 2001. *See Sims v. Browner*, Civ. No. 97-570(CKK) (D.D.C. May 23, 2001) (order referring motions). On March 22, 2002, Attorney Bruce J. Terris entered his appearance on behalf of Plaintiff. Magistrate Judge Kay then held a hearing on March 27, 2002 in an attempt to resolve the outstanding payment-related issues; at this hearing,

3

Magistrate Judge Kay "concluded that Plaintiff did not oppose David Shapiro's Motion to Withdraw based on the fact that Bruce Terris, Esquire had entered an appearance as counsel for Plaintiff" and "ordered Plaintiff to submit an amended motion for attorney's fees and costs within twenty days." *See Sims v. Browner*, Civ. No. 97-570(AK), at 1 (D.D.C. Feb. 23, 2003) (order resolving fee-related motions). As directed, Plaintiff filed an Amended Motion for Fees and Costs on April 24, 2002. *See* Pl.'s Am. Mot. for Fees and Costs.

> On February 24, 2003, Magistrate Judge Kay
>
> held a telephonic status conference on Plaintiff's Amended Motion for Attorneys' Fees and Costs ("Amended Motion"). During the conference, counsel for Defendant and David Shapiro's law partner represented that they had agreed on a compromise settlement on the attorneys' fee issue, which also includes attorneys' fees incurred on behalf of Gary Simpson, Esq., Plaintiff's initial counsel, who is deceased. Counsel for Plaintiff and counsel for Defendant also represented that the issue of reimbursement of Plaintiff's costs is not disputed by either party.

*See Sims v. Browner*, Civ. No. 97-570(AK), at 2 (D.D.C. Feb. 23, 2003) (order resolving fee-related motions). Accordingly, Magistrate Judge Kay denied as moot Plaintiff's Amended Motion for Attorneys' Fees and Costs and granted Shapiro's Motion to Withdraw. *Id*. Following this decision, the Court's case referral to Magistrate Judge Kay terminated on March 12, 2003. No party asked either Magistrate Judge Kay or this Court for reconsideration of his decision, or appealed his ruling with this Court. Indeed, no party asked this Court to take any further action, or brought any issues before this Court for another two and a half years.

    B.    *The Present Dispute*

In an effort to ensure that Defendant had complied fully with this Court's June 9, 2000 Order and Magistrate Judge Kay's February 23, 2003 Order, as well as the March 25, 1999 Settlement Agreement as set forth in Shapiro's letter to AUSA Harris, current counsel for Defendant, AUSA Peter S. Smith, Esq., took a series of steps to effectuate the payment of the

outstanding fees and costs. This process began on May 20, 2005, when Richard L. Swick, Esq., Shapiro's partner, sent a letter to AUSA Smith detailing their phone conversation and providing Defendant with a release stating, in relevant part:

> Defendant shall, subject to the terms and conditions set forth herein, pay the firm of SWICK & SHAPIRO the amount of One Hundred and Twelve Thousand Dollars ($120,000.00) [sic] in full and final satisfaction of all costs and fees (including any costs and fees that may be due to the Estate of Gary M. Simpson) in any way associated with the above-captioned lawsuit up to and including the date of David Shapiro's withdrawal as counsel in the case on February 28, 2003. *See* Docket No. 106. This release does not include any amounts to be paid separately to Patricia L. Sims under the original agreement entered by the court in this case on June 9, 2000, or any amounts that may be due to Ms. Sims' current attorney Bruce J. Terris for services rendered in connection with claims that may have accrued after June 9, 2000.

*See* Pl.'s Mot. for Decl. J., Ex. 1 at 2 (Release dated May 20, 2005).

Having been provided a copy of this release, Plaintiff's current attorney, Mr. Terris, and counsel for Defendant, Mr. Smith, had a telephone conversation about the payment of attorney's fees on May 24, 2005. *See* 12/7/05 Terris Aff. ¶ 3. While Mr. Smith stated that the original settlement agreement provided for the payment of attorney's fees, Mr. Terris responded that the agreement did not provide for the amount of the fees or other particulars. *Id*. Mr. Terris further stated that Plaintiff might lose a large sum of money from the payment of attorney's fees because of tax consequences, and informed Defendant that he and the partner of Plaintiff's former counsel, Mr. Swick, were having discussions in an effort to avoid such a problem. *Id*. As such, Messrs. Smith and Terris agreed that Defendant would not take further actions on this matter pending further discussions between Mr. Swick and Mr. Terris. *Id*.

On May 31, 2005, Messrs. Smith and Terris resumed their conversation, wherein Mr. Terris stated that Plaintiff did not agree to a settlement of fees between Defendant and Plaintiff's former counsel, Swick & Shapiro. *Id*. ¶ 4. Smith explained that a new federal statute, the American Jobs

5

Creation Act of 2004, Section 7003, which was designed to prevent the taxation of attorney's fees paid to plaintiffs in discrimination cases, did not apply retroactively. *Id*. Mr. Terris further stated that his discussions with Mr. Swick had broken down without an agreement. *Id*.

On June 2, 2005, Messrs. Smith and Terris once again talked. *Id*. ¶ 5. During this conversation, Mr. Smith proposed that Defendant could pay the attorney's fees (1) to Mr. Swick, (2) to Mr. Terris, who would divide the payment appropriately, or (c) to allow Plaintiff and Swick & Shapiro to litigate the disposition of the moneys. *Id*. Mr. Terris informed Defendant that Plaintiff opposed all three alternatives, and if an agreement with Swick & Shapiro was filed based on any of these three alternatives, Plaintiff would go to the Court to oppose it. *Id*.

On June 2, 2005, Mr. Terris resumed negotiations with the partner of Plaintiff's former counsel, Mr. Swick. *Id*. ¶ 6. On June 6, 2005, Mr. Terris wrote Mr. Swick a letter proposing language for a court order concerning the attorney's fees of Swick & Shapiro in order to protect Plaintiff from being required to pay income tax on the payments to Swick & Shapiro. *Id*.; *see also* Pl.'s Mot. for Decl. J., Ex. 2 (6/6/05 Letter from Terris to Swick). In relevant part, Mr. Terris' letter suggested these provisions:

> 1. The merits of the case have not been resolved. While this Court's order of _____ provides for the enforcement of the letter of David S. Shapiro, representing plaintiff, to Scott S. Harris, Assistant U.S. Attorney, of March 25, 1999, no judgment has been entered. That letter and the Court's order resolved only some of the issues in this case. Significant issues remain between the parties concerning the merits. The parties are now willing to settle the attorneys' fees for a portion of the case and the payment to plaintiff even though these issues remain.
>
> 2. Public Law 108-357, Section 703(a), (b), 118 Stat. 1546-1548 [the American Jobs Creation Act of 2004, Section 7003], applies to this order.

Pl.'s Mot. for Decl. J., Ex. 2 (6/6/05 Letter from Terris to Swick) at 1. According to Mr. Terris, he discussed his proposal with Mr. Swick that same day. *See* 12/7/05 Terris Aff. ¶ 7. Terris proposed

that Swick prepare the rest of the "proposed order." *Id*. Swick then stated that he would complete the Proposed Order, which would be a stipulation signed by the parties including a statement "so ordered" by the Court, and further informed Terris that he would provide the Proposed Order the following week. *Id*. However, Mr. Terris heard nothing further from Mr. Swick until after Defendant paid Swick & Shapiro the $120,000.00 in question. *Id*.

On June 21, 2005, Mr. Terris sent counsel for Defendant, Mr. Smith, a letter summarizing Plaintiff's position. *See* Pl.'s Mot. for Decl. J., Ex. 3 (6/21/05 Letter from Terris to Smith). Terris stated that Swick & Shapiro is neither a party to the litigation, nor representing Plaintiff. *Id*. at 1. Terris informed Smith that negotiations between Plaintiff and Swick & Shapiro were being reopened "in an effort to protect plaintiff from the payment of taxes on the moneys paid to Swick & Shapiro." *Id*. Terris emphasized:

> While plaintiff cannot prevent defendant from making payment to Swick & Shapiro, if defendant does so, plaintiff will consider such payment as a gratuity and not payment for fees and expenses in this case. Plaintiff is not releasing defendant from payment of her fees and expenses regardless of any payment to Swick & Shapiro unless she is protected with regard to taxes.

*Id*. at 2. Terris concluded by noting that "Plaintiff therefore requests that no payment be made to Swick & Shapiro for fees and expenses in this case until plaintiff and Swick & Shapiro resolves the issues between them." *Id*.

On June 23, 2005, Smith, on behalf of Defendant, sent Mr. Terris a letter stating, in relevant part:

> As you know, the 1999 agreement makes no provision for the tax implications of the payment of attorney fees or the monetary payment to Ms. Sims that are set forth in that agreement. Defendant has no choice but to carry out the terms of the agreement as ordered by the Court, including the payment of attorney fees. Ms. Sims' concern about the tax implications of these payments is beside the point. Moreover, Plaintiff failed to raise this complaint with the Court when she sought to enforce the settlement in 1999. Ms. Sims, through her attorneys, requested that the Court rule

7

> that the 1999 letter was a valid and enforceable settlement, which the Court did. Since the 1999 agreement contains no provision for the offset of taxes on the fee award or on moneys paid to Ms. Sims, which are also contemplated under the agreement, it is inconsistent, and plainly obstructionist, for Ms. Sims to now take the position that no fees should be paid because she may owe taxes on those fees.

Pl.'s Mot. for Decl. J., Ex. 4 (6/23/05 Smith Letter to Terris) at 1. Mr. Smith further noted that "Richard Swick is not settling the case on any new terms but rather receiving payment of fees pursuant to the existing settlement in this case, as ordered by the Court." *Id*. Finally, Mr. Smith noted that:

> We had suggested that, as an alternative to paying the fees to Swick & Shapiro, that we would be willing to pay you on Ms. Sims behalf, to pay Ms. Sims herself, or to place the money in the Court's escrow account pending resolution of the issue by the Court. In your letter, you state that you will "return the check so that neither plaintiff nor myself becomes exposed to taxes on this payment," and that, likewise, we should not pay the Court so that Ms. Sims can avoid "attorneys' fees to herself resulting from the litigation which would almost certainly result." Again, you have provided no alternative strategy. The fact that Ms. Sims may have tax liability or may accrue additional attorney fees related to this case does not relieve Defendant of its obligations under the 1999 agreement.

*Id*. at 2.

On August 8, 2005, James Paxton, another AUSA, called Mr. Terris on behalf of Mr. Smith, who was on vacation. *See* 12/7/05 Terris Aff. ¶ 8. Mr. Terris told AUSA Paxton that Mr. Swick had not gotten back to him, and stressed that Plaintiff did not want Defendant to issue a check for attorney's fees. *Id*. On August 9, 2005, Mr. Smith called Mr. Terris to inform him that Mr. Paxton's call had been a mistake, and that nothing was happening on Defendant's end. *Id*. ¶ 9.

Without any further notification to Plaintiff's present counsel, Mr. Terris, Mr. Swick, the partner of Plaintiff's former attorney, sent a letter on September 22, 2005 directly to Plaintiff stating that Defendant had paid Swick & Shapiro $120,000.00 based upon the same release sent by Mr. Swick to Defendant in May 2005. *See* Pl.'s Mot. for Decl. J., Ex. 5 (9/22/05 Letter from Swick to

8

Sims) at 1.  Mr. Swick's letter was accompanied by a check for $16,018.00, reimbursing Plaintiff for the $14,000.00 that she paid Swick & Shapiro and another $2,018.00 for litigation expenses that she had directly incurred.  *Id.*  Plaintiff has not cashed this check.  *See* 12/7/05 Terris Aff. ¶ 10.

On September 27, 2005, Mr. Smith, on behalf of Defendant, wrote Mr. Terris that the 1999 Settlement provided for a payment of $6,000 to Plaintiff for damages.  *See* Pl.'s Mot. for Decl. J., Ex. 6 (9/27/05 Letter from Smith to Terris) at 1.  Smith's letter was accompanied by a check to Plaintiff for $8,600 based on a "stipulation exchanged between the parties [which] reflects an agreement that the amount owed to Ms. Sims, including a slight increase of the $6000 to reflect TSP contributions, is $8600."  *Id.*  Mr. Smith's letter noted that both this Court's June 9, 2000 Order at the Motion Hearing, as well as Magistrate Judge Kay's February 28, 2003 Order, had long since become final due to lapse of time, ensuring that this case was closed and payment due.  *Id.* at 1-2.  Plaintiff has also not cashed this check.  *See* 12/7/05 Terris Aff. ¶ 11.

## II: DISCUSSION

The genesis of this dispute arises out of an issue dealt with by the Supreme Court in *Commissioner of Internal Revenue v. Banks*, 543 U.S. 426, 125 S.Ct. 826, 160 L.Ed.2d 859 (2005).  In *Banks*, the Supreme Court was faced with "whether the portion of a money judgment or settlement paid to a plaintiff's attorney under a contingent-fee agreement is income to the plaintiff under the Internal Revenue Code, 26 U.S.C. § 1 *et seq.* (2000 ed. and Supp. I)."  *Id.* at 429, 125 S.Ct. 426.  Upon a review, the Court concluded that, "as a general rule, when a litigant's recovery constitutes income, the litigant's income includes the portion of the recovery paid to the attorney as a contingent fee."  *Id.* at 426, 125 S.Ct. 826.  As the *Banks* Court stressed, in a contingent-fee situation, "a principal relies on an agent to realize an economic gain, and the gain realized by the agent's efforts is income to the principal.  The portion paid to the agent may be deductible, but

absent some other provision of law it is not excludable from the principal's gross income." *Id*. at 437, 125 S.Ct. 826. While the Court recognized that there may be a situation where "the plaintiff loses money by winning the suit" due to tax considerations where "the plaintiff seeks only injunctive relief, or when the statute caps plaintiffs' recoveries, or when for other reasons damages are substantially less than attorney's fees," the Court – given the posture of the case – declined to address these issues. *See id*. at 438-39, 125 S.Ct. 826.

Plaintiff in this case might arguably be placed in this tenuous situation described by the Supreme Court in *Banks*, i.e., where she actually "loses" money due to tax considerations given that the majority of the relief garnered through her settlement with Defendant was injunctive and/or was directed at her working conditions. *See* Def.'s Opp'n, Ex. 1 (3/25/99 Shapiro Letter to Harris); *see also Porter v. U.S. Agency for Int'l Dev.*, 293 F. Supp. 2d 152, 155 (D.D.C. 2003) ("The portion of an award that goes to pay attorney's fees may be partially deductible, but the deduction will not be available if the Alternative Minimum Tax ("AMT") is triggered. The unhappy result is (or theoretically can be) that the tax consequences of an award of compensatory damages can seriously diminish or even exceed the award."). Indeed, Defendant originally agreed to monetary damages to Plaintiff in the amount of $6,000.00 ($8,600.00 was later provided) – substantially less than the $120,000.00 in attorney's fees paid by Defendant to Plaintiff's former counsel in September 2005.

Two facts might allow Plaintiff to avoid this tax-based quandary. First, after the litigant in *Banks*

> settled his case, the fee paid to his attorney was calculated solely on the basis of the private contingent-fee contract. There was no court-ordered fee award, nor was there any indication in Banks' contract with his attorney, or in the settlement agreement with the defendant, that the contingent fee paid to Banks' attorney was in lieu of statutory fees Banks might otherwise have been entitled to recover.

*Banks*, 543 U.S. at 439, 125 S.Ct. 826. Given these facts, the Supreme Court declined to address

10

the respondent/litigant's contention that application of the "anticipatory assignment principle" would be inconsistent with the purpose of statutory fee-shifting provisions, such as those in cases brought under 42 U.S.C. §§ 1981, 1983, and 2000(e) *et seq.* (such as the case brought by Plaintiff in this action). *Id*. While the Court is not intimately familiar with the fee relationship between Plaintiff and her former counsel, Mr. Shapiro, it may well be the case that her situation may be factually distinguishable from the situation faced by the respondent/litigant in *Banks* or she may be able to make the "anticipatory assignment principle" argument that the Supreme Court in *Banks* declined to address.

      Second, after situations such as those in *Banks* arose, Congress enacted the American Jobs Creation Act of 2004 ("the Act"), 118 Stat. 1418. Section 703 of the Act amended the Internal Revenue Code by adding Section 62(a)(19). *Id*. at 1546. The amendment allows a taxpayer, in computing adjusted gross income, to deduct "attorney fees and court costs paid by, or on behalf of, the taxpayer in connection with any action involving a claim of unlawful discrimination." *Id*. The Act defines "unlawful discrimination" to include a number of specific federal statutes, §§ 62(e)(1)-(16), any federal whistle-blower statute, § 62(e)(17), and any federal, state, or local law "providing for the enforcement of civil rights" or "regulating any aspect of the employment relationship . . . or prohibiting the discharge of an employee, the discrimination against an employee, or any other form of retaliation or reprisal against an employee for asserting rights or taking other actions permitted by law, § 62(e)(18). *Id*. at 1547-48. However, the Act only applies to fees paid after the passage of the Act on October 22, 2004 by its plain language: "Effective Date. The amendments made by this section shall apply to fees and costs *paid after the date of the enactment of this Act* with respect to any judgment or settlement occurring after such date." *Id*. (emphasis added). Here, while the

settlement relevant to Plaintiff was effectuated on March 25, 1999, the attorney's fees paid by Defendant were not provided to Plaintiff's former counsel, Mr. Shapiro, until September 2005. As such, under the plain wording of the Act, given that the "fees and costs" were "paid after the enactment of" the Act, Plaintiff might fall within the protections of the Act; however, given that the "judgment or settlement" occurred before – and not after – October 22, 2004, the date of the Act's enactment, Plaintiff arguably falls outside of the Act's protections, leaving her with potential tax liability.

In order to guard against the possibility that she falls outside of the protections of the Act and into the same category as the respondent in *Banks*, wherein tax liability is assessed against her for the attorney's fees provided to Mr. Shapiro, Plaintiff's motion seeks to have this Court declare that the $120,000.00 payment provided by Defendant to Plaintiff's former counsel, Mr. Shapiro, was a gratuity that did not satisfy any claim to attorney's fees in this case. *See* Pl.'s Mot. for Decl. J. at 1. Central to Plaintiff's motion is her assertion that "it is well-established that the right to attorneys' fees under fee-shifting statutes belongs entirely to the client." *Id*. at 8. Plaintiff claims that Defendant and her former counsel failed to recognize that fact in this case, whereas "[P]laintiff . . . clearly and repeatedly told both her former counsel, Swick & Shapiro, and defendant's counsel that she did not agree to any fees being paid until she and her former counsel made arrangements to ensure that plaintiff would not incur any tax liability because of the payment of attorneys' fees." *Id*. at 10. Given the failure of Defendant and her former counsel to recognize her wishes, Plaintiff contends that the "payment was clearly in violation of law. Therefore, plaintiff is entitled to a declaratory judgment that the payment does not constitute the payment for the attorneys' fees and expenses of plaintiff in this case." *Id*.

While this Court, like the court in *Porter*, *see* 293 F. Supp. 2d at 156-57, recognizes and certainly empathizes with the tenuous situation that Plaintiff faces due to the IRS's long-held position on this issue, it is clear that Plaintiff's request for declaratory relief must fail in the present case. Here, it is clear that Plaintiff would have the Court believe that the parties are still negotiating the contours of a global settlement of the merits of her case. For instance, in his June 6, 2005 letter to Plaintiff's former counsel, Plaintiff's current attorney – Mr. Terris – states, in relevant part:

> The merits of the case have not been resolved. While this Court's order of _____ provides for the enforcement of the letter of David S. Shapiro, representing plaintiff, to Scott S. Harris, Assistant U.S. Attorney, of March 25, 1999, no judgment has been entered. That letter and the Court's order resolved only some of the issues in this case. Significant issues remain between the parties concerning the merits. The parties are now willing to settle the attorneys' fees for a portion of the case and the payment to plaintiff even though these issues remain.

Pl.'s Mot. for Decl. J., Ex. 2 (6/6/05 Letter from Terris to Swick) at 1. Viewing the merits of the case as still unresolved, Plaintiff then cites numerous cases for the principle that an award of attorney's fees in the civil rights context belongs to the plaintiff, rather than the attorney; as such, the plaintiff may "waive, settle, or negotiate that eligibility." *Venegas v. Mitchell*, 495 U.S. 82, 88, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); *see also Evans v. Jeff D.*, 475 U.S. 717, 730-31, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) ("On the contrary, the language of the [Fees] Act, as well as its legislative history indicates that Congress bestowed on the 'prevailing *party*' (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees in specified civil rights actions. It did not prevent the party from waiving the eligibility anymore than it legislated against assignment of this right to an attorney[.]"); *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1105 (D.C. Cir. 1985) ("in a Title VII class action plaintiffs may, voluntarily and on their own initiative, offer a waiver or concession of possible claims for fees and costs in an effort to encourage settlement"); *Soliman v. Ebasco Servs. Inc.*, 822 F.2d 320, 323 (2d Cir. 1987) ("Thus, independent

of his client, an attorney has no personal right to an award of statutory attorney's fees under 42 U.S.C. § 2000e-5(k)."). Pursuant to this right, Plaintiff now seeks to waive and disclaim any attorney's fees that may be due or may have been paid to her former counsel, Mr. Shapiro. *See* Pl.'s Mot. for Decl. J. at 10.

Plaintiff's argument is premised upon a flawed understanding of the present procedural posture of this case. On March 25, 1999, Plaintiff and Defendant effectuated an apparent settlement in this case, which – in part – obligated Defendant to:

> Pay Ms. Sims the costs of this action, *including reasonable attorneys' fees* (if the parties cannot agree on the amounts of fees and costs, the matter will be submitted to the Court for resolution, with the EPA agreeing only that Ms. Sims is here entitled to an award of costs, including reasonable attorneys' fees, pursuant to Title VII and Rehabilitation Act)[.]

Def.'s Opp'n, Ex. 1 (3/25/99 Shapiro Letter to Harris) (emphasis added). Following a dispute between the parties as to whether a binding settlement had actually been reached, this Court held a motions hearing on June 9, 2000, during which (1) it ruled that the March 25, 1999 letter was an enforceable settlement agreement binding on all parties and (2) closed this case. *See* 6/9/00 Motions Hrg. Tr.; *Sims v. Browner*, Civ. No. 97-570(CKK) (D.D.C. July 10, 2000) (order dismissing case). Questions later arose regarding the scope of the fees and costs to be awarded, and the Court re-opened this case solely to resolve this limited issue. In addressing this remaining, circumscribed dispute, Plaintiff filed both a Motion for Award of Costs, and for Reasonable Attorney's Fees on March 28, 2001, and an Amended Motion for Award of Fees and Costs on April 24, 2002. In a telephonic conference held on February 24, 2003, which included Plaintiff's former counsel, Plaintiff's present counsel, and counsel for Defendant, the parties represented that these issues had been resolved, and Magistrate Judge Kay ruled that the parties had reached an agreement – effectively closing out this case. *See Sims v. Browner*, Civ. No. 97-570(AK), at 2 (D.D.C. Feb. 23,

14

2003) (order resolving fee-related motions).

In light of these circumstances, *Evans* and its progeny provide no support for Plaintiff's position. The Supreme Court's decision in *Evans* stands for the unremarkable proposition that a plaintiff can waive the right to seek attorney's fees during the <u>pendency</u> of his or her case, which can provide a means to effectuate settlements that might otherwise not occur. *See Evans*, 475 U.S. at 730-31 & n.20, 106 S.Ct. 1531. This case is distinguishable from the *Evans* line of cases because (1) the case is no longer pending with issues relating to the merits still left to be decided; instead, this case has long since settled, with all court orders – which are three to six years old – left unchallenged and unappealed; and (2) Plaintiff actually sought attorney's fees as part of her action and in her proposed settlement. Importantly, Plaintiff here did seek attorney's fees, a fact reflected in both the March 25, 1999 letter that the Court ruled – at Plaintiff's request – was an enforceable settlement agreement binding on Defendant, and in the two fee petitions that Plaintiff subsequently filed in 2001 and 2002. Defendant's legal obligations to pay attorney's fees arise from the March 25, 1999 letter and the Court's June 9, 2000 Order, neither of which makes any provision for tax liabilities. When disputes arose as the scope of the legal fees in this case, Plaintiff engaged in a mediation before Magistrate Judge Kay, reached an agreement with all interested parties, and stood mute when the Court closed her case based on that agreement. Once again, there is no evidence that Plaintiff contemplated – or that the parties agreed upon – any tax provision for the attorney's fees to be awarded in this case at that time. Pursuant to the Court's June 9, 2000 Order, the March 25, 1999 Settlement Agreement, and Magistrate Judge Kay's subsequent orders, the Court terminated the mediation and closed this case. No objection or appeal was made by Plaintiff.

Six years after a detailed settlement that provided for attorney's fees was effectuated in this case, and two and a half years after Magistrate Judge Kay ruled that no further disputes existed,

Plaintiff now argues that it is improper for her former counsel to receive an award of attorney's fees or engage in any fee-related discussions because the firm no longer represents her. *See* Pl.'s Mot. for Decl. J. at 10. What Plaintiff fails to understand is that the parties have not reached any new settlement of these issues; rather, Defendant merely issued the payments contemplated by, and pursuant to, the pre-existing agreements in this case, as was ordered by both this Court and Magistrate Judge Kay. Complying with the terms of the parties March 25, 1999 Settlement Agreement and this Court's order is neither improper nor "clearly in violation of law," as Plaintiff claims. *Id*.

Plaintiff also argues that Defendant should have waited to make its payment to Plaintiff's former counsel until she could reach a new agreement with her former counsel indemnifying her for any tax consequences. *Id*. at 6, 10. Here, Defendant did refrain from making the required payment for a considerable period of time, but no such agreement was forthcoming. Nor was any such agreement provided for under the terms of the 1999 agreement or the Court's subsequent orders in this case. Indeed, Defendant put Plaintiff on notice several months in advance that a payment would be forthcoming, and proposed several alternatives to Plaintiff that could have potentially aided her quest to avoid tax liability. Pl.'s Mot. for Decl. J., Ex. 4 (6/23/05 Smith Letter to Terris) at 1-2. Plaintiff rejected each of the alternatives suggested by Defendant, and now attempts to re-write the actual terms of the March 25, 1999 Settlement Agreement, the Court's June 9, 2000 Order, her representations before Magistrate Judge Kay, and Judge Kay's February 28, 2003 Order. *See* Pl.'s Mot. for Decl. J. at 4-5. Given the posture of this case and its underlying settlement, Plaintiff's attempt revision of history is without merit.

Importantly, the Settlement Agreement and subsequent court orders in this case effectuated certain binding obligations upon Defendant. One of these obligations was to:

> Pay Ms. Sims the costs of this action, *including reasonable attorneys' fees* (if the parties cannot agree on the amounts of fees and costs, the matter will be submitted to the Court for resolution, with the EPA agreeing only that Ms. Sims is here entitled to an award of costs, including reasonable attorneys' fees, pursuant to Title VII and Rehabilitation Act)[.]

Def.'s Opp'n, Ex. 1 (3/25/99 Shapiro Letter to Harris) (emphasis added). Pursuant to this Court's June 9, 2000 Order, which recognized the binding effect of the March 25, 1999 settlement letter, Defendant's obligation to pay attorney's fees – which Plaintiff bargained for, and would subsequently bargain again for – became final. Had Plaintiff wanted to avoid these attorney's fees or create certain protections vis-á-vis tax liability, Plaintiff – like the respondents/plaintiffs in *Evans* – should have bargained for such provisions during the settlement process or during the mediation before Magistrate Judge Kay. Plaintiff decided against or failed to take such steps, and the pendency of her action terminated. As such, no declaratory relief may be awarded to Plaintiff with respect to Defendant's September 2005 decision to provide her former counsel with $120,000.00 in attorney's fees because Defendant was merely carrying out its obligations under the settlement effectuated by Plaintiff and enforced pursuant to Plaintiff's requests. While Plaintiff might now be dissatisfied with the potential tax implications of her prior decisions, Plaintiff's request for relief is simply improper given the posture of this case.

## III CONCLUSION

For the reasons set forth above, the Court shall deny Plaintiff's Motion for Declaratory Judgment Relating to Attorneys' Fees and Expenses. An Order accompanies this Memorandum Opinion.


Date:   April 11, 2006

                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge